**AFFIRMED and Opinion Filed August 27, 2024**



**In the**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-24-00460-CV**

**IN THE INTEREST OF P.L.L. AND B.F.L., CHILDREN,**
**On Appeal from the 15th Judicial District Court**
**Grayson County, Texas**
**Trial Court Cause No. FA-22-1292**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Pedersen, III, and Carlyle
Opinion by Justice Carlyle

A trial court terminated appellant Mother's parental rights to her two eldest children on four separate grounds. *See* TEX. FAM. CODE 161.001(b)(1)(D), (E), (O) & (P). On appeal, Mother argues she received ineffective assistance of counsel and that the trial court erred when it permitted the Department of Family and Protective Services to designate a witness two weeks before trial over her timely and specific objection. We affirm in this memorandum opinion. *See* TEX. R. APP. P. 47.4.

In her first issue, Mother argues she received ineffective assistance of counsel because her counsel filed a motion to withdraw on December 1, 2023, she received substitute counsel on February 8, 2024, and her attorney's withdrawal caused her irreparable harm. In counsel's motion to withdraw, he represented that "there exists

a conflict between the client and attorney," the "conflict is not one that can be redressed," and the "continuation of counsel in representing [Mother] would not be in [her] best interest."[1]

To prevail on her ineffective assistance of counsel argument, Mother must first show that her counsel's performance was deficient. *In re J.O.A.*, 283 S.W.3d 336, 342 (Tex. 2009). This requires showing that her counsel made errors so serious that they were not functioning as the "counsel" guaranteed by the Sixth Amendment. *In re H.R.M.*, 209 S.W.3d 105, 111 (Tex. 2006). We may not reverse for ineffective assistance "when counsel's actions or omissions may have been based upon tactical decisions, but the record contains no specific explanation for counsel's decisions." *In re J.W.*, No. 05-23-01049-CV, 2024 WL 1340367, at *11 (Tex. App.—Dallas Mar. 29, 2024, no pet.) (mem. op.). When an appellant raises a claim for ineffective assistance of counsel for the first time on direct appeal, the record is often inadequate to show that counsel's conduct fell below an objectively reasonable standard of performance. *In re A.C.*, No. 14-23-00577-CV, 2024 WL 440263, at *1 (Tex. App.—Houston [14th Dist.] Feb. 6, 2024, pet. denied) (mem. op.). "When the record is silent concerning the reasons for trial counsel's actions, we do not engage in

---

[1] While Mother did not sign counsel's motion to withdraw, *see* TEX. R. CIV. P. 10, and her appellate brief mentions this defect, she has not assigned error on that basis and we do not consider it further. *See* TEX. R. APP. P. 38.1(i).

speculation to find ineffective assistance of counsel." *In re C.C.*, No. 05–17–01128–CV, 2018 WL 490921, *4 (Tex. App.—Dallas Jan. 19, 2018, no pet.) (mem. op.).

Other than the motion to withdraw, the record before us contains no evidence concerning the conflict between Mother and her first-appointed counsel. Specifically, there is no evidence (1) identifying the nature of the conflict, (2) controverting her first-appointed counsel's assessment that a conflict existed, (3) showing when Mother's first-appointed counsel learned of the conflict, or (4) showing her first-appointed counsel's strategy—or the absence thereof—when he filed his motion to withdraw. Similarly, Mother has failed to present either argument or evidence as to how counsel's conduct was deficient, what counsel should have done under the circumstances, and what counsel did or did not do after filing his motion to withdraw. Under the circumstances, we conclude Mother did not meet her burden to show that she received ineffective assistance of counsel. *See In re M.S.*, 115 S.W.3d 534, 545 (Tex. 2003).

In her second issue, Mother argues the trial court erred when it permitted the Department to designate Detective Jeremiah Phillips as a witness two weeks before trial. *See* TEX. R. CIV. P. 190.3(b)(1)(B). Assuming the trial court erred,[2] we examine whether Phillips's testimony was cumulative of other testimony or evidence properly admitted at trial and was consequential to the judgment. *See In re D.W.G.K.*, 558

---

[2] This is an assumption indeed, because as Mother notes, the parties productively engaged in informal discovery due to the unique timing of the court appointing replacement counsel.

S.W.3d 671, 691 (Tex. App.—Texarkana 2018, pet. denied) (citing *Jamail v. Anchor Mortg. Servs., Inc.*, 809 S.W.2d 221, 223 (Tex. 1991) (per curiam)). When making this determination, we must examine the entire record "to determine whether the judgment was controlled by the testimony that should have been excluded." *Jamail*, 809 S.W.2d at 223. Mother does not detail how any specific portion of Detective Phillips's testimony harmed her, but argues only a technical rule violation that she claims should have meant blanket exclusion of his testimony. We examine the relevant portions of the testimony in view of the entire record to determine harm. *See* TEX. R. APP. P. 44.1(a).

First, Phillips testified that six years prior to trial, he executed an arrest warrant for an unrelated party at Mother's home based on a tip from the unrelated party's significant other. When Phillips went in Mother's home, he saw the unrelated party run towards the back of the house. Phillips then learned his suspect was inside a bathroom, heard flushing sounds, and believed the suspect was flushing drugs. Phillips later field tested the toilet water and learned it was positive for methamphetamine. This portion of Phillips's testimony is cumulative of Department's Exhibit 2, the affidavit in support of removal, to which counsel did not object, and which details the execution of the warrant.

Second, Phillips testified that before he entered Mother's home, he detected the strong odor of marijuana and believed it was coming from Mother's bedroom. This circumstantial evidence tends to prove that someone in Mother's bedroom used

–4–

marijuana and is cumulative of other evidence properly admitted at trial, including Mother's stipulation that she entered into a plea agreement concerning the resulting possession of marijuana charge and her admissions in Department's Exhibit 33, its Original Petition for Protection of P.L.L. and supporting affidavits, admitted without objection.

Third, Phillips testified that after entering Mother's home, he acquired a search warrant, searched Mother's home, and found (1) a glass pipe containing methamphetamine in her bedroom under a pillow on her bed; (2) an energy drink can fashioned to conceal drugs containing marijuana residue located in the dresser; (3) two glass bongs containing liquid methamphetamine located in her bedroom, one containing 53.8 grams of liquid methamphetamine and the other containing 26 grams of liquid methamphetamine; (4) .05 ounces of marijuana located throughout he bedroom; (5) 7.2 grams of methamphetamine located in the bedroom; and (6) a drink bottle repurposed into a bong containing 180 grams of liquid methamphetamine. While this evidence provided details that were not previously known to the jury, most appear in Department's Exhibit 2. To the extent the exact details are not in that exhibit, Mother eliminated the harm by stipulating that she entered into a plea agreement for the resulting charges and was on probation at the time of trial.

Fourth, Detective Phillips testified that Mother "was charged with abandoning and endangering a child, possession of marijuana less than 2 ounces, and possession of a controlled substance under 200 grams." Again, Mother eliminated the

substantive harm by stipulating to the charges, and it was cumulative because this appeared in Department's Exhibits 2 and 33.

Fifth, Phillips testified that officials removed Mother's other child from her custody based on the presence of easily accessible methamphetamine in her home. This evidence is cumulative of Karah Brant's testimony that Mother "met the State's criteria for negligence for the children, specifically abusing substances . . . in such a way it would – they couldn't care for their child" and the Department removed Mother's daughter from her care as a result. Portions of this detail also appear in Exhibits 2 and 33.

Sixth, Phillips testified that a home with Mother or her mother were "absolutely not" safe places for a child. Again, this evidence is cumulative because Karah Brant testified that the Department was concerned about both Mother and her children living with her mother.

Finally, Phillips testified that both 26 grams and 53.8 grams of methamphetamine were enough to do substantial harm to a child if ingested. This testimony is not specifically cumulative of other evidence properly admitted at trial. But a reasonable juror could have inferred from the amount of this Schedule II controlled substance would substantially harm a child. And Department Exhibit 2 correctly characterized 12 grams of methamphetamine found in Mother's room when Phillips and his colleagues executed the warrant as "a large amount." We cannot say that this evidence, obvious as it is minor in relation to the entire record

of Mother's behavior and the circumstances leading to termination here, "was reasonably calculated to cause and probably did cause the rendition of an improper judgment." *See* TEX. R. APP. P. 44.1(a)(1). In any event, Mother did not attack the sufficiency of the evidence supporting the jury's verdict.[3]

Having considered Detective Phillips's testimony as a whole, and in view of the entire record, any error in admitting it was harmless because it was either cumulative or did not by its introduction control the judgment. *See Jamail*, 809 S.W.2d at 223; *Brown v. Hopkins*, 921 S.W.2d 306, 312 (Tex. App.—Corpus Christi, 1996, no pet.).

We affirm the trial court's judgment.

240460f.p05

/Cory L. Carlyle/
_____
CORY L. CARLYLE
JUSTICE

---

[3] In a "Conclusions and Prayer" section of the brief immediately preceding the "Prayer" but following the "Argument," appellate counsel concluded by asking whether "the jury's verdict [should] be overturned in the face of substantial evidence supporting a conclusion that Respondent Mother (1) had committed acts that endangered her children" and that it was in their best interest to terminate her parental rights coupled with (2) facts indicating an uncertain future for Mother due to "pending felony warrants for her arrest," and (3) "testimony that the children were placed with an adoption-minded great aunt with whom they were already acquainted." For failure to cite the record, case law, and any relevant facts—not to mention that none were either helpful or supportive of reversal—we do not construe this to present an issue for our review. *See* TEX. R. APP. P. 38.8(i).



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF P.L.L. AND
B.F.L., CHILDREN

No. 05-24-00460-CV

On Appeal from the 15th Judicial
District Court, Grayson County,
Texas
Trial Court Cause No. FA-22-1292.
Opinion delivered by Justice Carlyle.
Justices Partida-Kipness and
Pedersen, III participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 27th day of August, 2024.